_____ ENTERED
_____ LOGGED _____ RECEIVED

NOV 1 8 2014

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY
_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AUSTIN TORNEY | * | |
| Petitioner, | | |
| v. | * | CIVIL ACTION NO. GJH-14-3488 |
| STATE OF MARYLAND | * | |
| Respondent. | | |

\*\*\*\*\*

## MEMORANDUM

On November 5, 2014, Petitioners Haslim El and Haslim Ankh El, members of the Moorish Holy Temple of Science/Moorish Science Temple of American Divine, filed a writ of habeas corpus on behalf of Austin Torney, alleging that Torney was "threatened to be kidnapped and held for profit by the public servants of the State of Maryland." ECF No. 1. They hold themselves out as Torney's authorized representatives and seemingly allege that Torney was subject to false arrest without a warrant. *See id.* Haslim-El and Haslim Ankh-El refer to a domestic family case currently proceeding against Torney in the Circuit Court for Prince George's County. *See White v. Torney*, Civil Case No. CAD05-21956. Attached to the writ is a document captioned as a "writ of discovery," which cites to federal case law and appears to seek the "delegation" of authority over Torney's case to this Court. For reasons to follow, the writ shall be summarily dismissed.[1]

First, aside from their own self-serving statements, there is no showing that Haslim-El and Haslim Ankh-el have legal standing to file a writ on behalf of Torney. Courts have a duty to raise issues of standing *sua sponte*. *See Biggs v. Best, Best & Krieger*, 189 F.3d 989, 998 n. 7 (9th Cir. 1999). The standing requirement stems from Article III of the United States Constitution ("Article III"), which requires that federal courts adjudicate only actual cases and controversies. *See United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996).

---

[1] The writ was not accompanied by either the $5.00 fee or an indigency application. Petitioners shall

Article III standing is an "indispensable part" of a litigant's case. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

Haslim El and Haslim Ankh El may intend to proceed on Torney's behalf by asserting "next friend" standing. There are two firmly rooted prerequisites for "next friend" standing. First, the "next friend" must provide an adequate explanation– such as inaccessibility, mental incompetence, or other disability– as to why the real party in interest cannot appear on his or her own behalf to prosecute the action. *See Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990) (citations omitted). Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest. *See id.* at 164. While the court appreciates Haslim El and Haslim Ankh El concerns, there is no showing that Austin Torney is unable to prosecute his own claims. Accordingly, Haslim El and Haslim Ankh El lack standing to bring this action on Torney's behalf.

Further, it is black-letter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction. *See McCulloch v. Vélez,* 364 F.3d 1, 5 (1st Cir. 2004); *see also* Fed. R. Civ. P. 12(h)(3). The claims raised in this writ plainly relate to a long-standing and ongoing domestic case involving Austin Torney and Shauna White involving the custody and the support of their child in the Circuit Court for Prince George's County. *See White v. Torney*, CAD05-21956 (copy attached). The public docket shows that Torney and White were granted joint legal custody of the child and Torney was ordered to make monthly support payments. In 2013, however, a petition for contempt was filed and in 2014, a number of contempt hearings were held before Judge

---

not be required to cure this omission.

Chapdelaine. At a September 3, 2014 hearing, Torney was ordered to make a support payment before the next court date or risk jail. Another contempt hearing was held on October 22, 2014.

Even if Haslim El and Haslim Ankh El had standing to file the writ on behalf of Torney, the case may not proceed. First, it involves matters of family law. Such issues have traditionally been reserved to the state or municipal court systems with their expertise and professional support staff. *See Moore v. Sims*, 442 U.S. 415, 435 (1979). Under the domestic relations exception to federal jurisdiction, federal courts generally abstain from review of such cases. *See Ankenbrandt v. Richards*, 504 U.S. 689, 701-05 (1992). It may be appropriate for the federal courts to decline to hear a case involving elements of the domestic relationship, even when divorce, alimony or child custody is not strictly at issue:

> This would be so when a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties.

*Id.* at 705-706 (quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814 (1976)).

This conclusion is supported by sound policy considerations. Issuance of decrees of this type not infrequently involves retention of jurisdiction by the state court and deployment of social workers to monitor compliance. As a matter of judicial economy, state courts are eminently more suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over child custody and support decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power over these cases because of the special proficiency

3

developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees.

Second, the Court is also without jurisdiction to review the gravamen of the allegations. The action is based upon the history of a state court proceeding nine years in the making and takes issue with its judicial determinations. Under the *Rooker-Feldman* doctrine, a federal court does not have jurisdiction to overturn a state court judgment, even when the federal complaint raises allegations that the state court judgment violates a claimant's constitutional or federal statutory rights. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In creating this jurisdictional bar, the Supreme Court reasoned that because federal district courts have only original jurisdiction, they lack appellate jurisdiction to review state court judgments. *See Rooker*, 263 U.S. at 413-14.[2]   In effect, the *Rooker-Feldman* doctrine precludes federal court action "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 281 (2005).

For the aforementioned reasons, the Court hereby dismisses the case for lack of federal court subject-matter jurisdiction. A separate Order follows.


Dated: <u>November 18, 2014</u>                          <u>        /S/                        </u>
                                                          George Jarrod Hazel
                                                          United States District Judge

---

[2] The Supreme Court explained that it is the only court with federal court appellate jurisdiction over state court judgments. *See Feldman*, 460 U.S. at 476 (citing 28 U.S.C. § 1257).